**RUNCI v. UNITED STATES.**

No. 1210.

United States District Court
D. Massachusetts.

Feb. 9, 1949.

See also 82 F.Supp. 532.

Harry Kisloff, of Boston, Mass., for libellant.

William T. McCarthy, U. S. Atty., and Edward O. Gourdin, Asst. U. S. Atty., both of Boston, Mass., for respondent.

SWEENEY, Chief Judge.

In this action the beneficiary of a Second Seaman's War Risk Policy seeks to recover the sum of $5,000 by reason of the alleged death of the insured directly and proximately caused by risks of war and warlike operations.

Findings of Fact

In early February, 1944, George F. Kelley, the insured, then thirty-seven years of age, became a member of the crew of the Liberty Ship, John T. Holt, and became a cook on that vessel. Prior to signing on, he was given a medical examination by the United States Maritime Commission and no disabilities or ailments of any kind were noted.

The Holt left New York on February 27, 1944, in a convoy bound for Murmansk, Russia. This was during a period when the shipping losses were very heavy. The Murmansk run was one of the most dangerous of the voyages which were made by merchantmen. During the trip to and from Russia the Holt underwent many dangerous and harrowing experiences. It went through heavy storms, tremendous ice fields, and thick fog under wartime blackout regulations. There was a constant submarine menace and several attacks on the convoy of which the Holt was a part. While the Holt was not struck, in one instance a torpedo barely missed her, striking a companion ship and sinking it within a few minutes with a loss of several hundred lives. Depth charges were dropped constantly by escort vessels in order to eliminate the submarine menace. Often German reconnoissance planes flew overhead and at least one plane dropped bombs close to the Holt. During this voyage the deceased exhibited many signs of increasing tension and nervousness. He lost over twenty pounds during the period of the voyage which was about four months. He ate and slept irregularly, was irritable with his fellow crewmen, and exhibited signs of being in a tired and worn-out condition. The voyage terminated by the return of the vessel to the United States on May 29, 1944. Kelley was in bad shape at that time. On June 4, 1944, six days after his discharge, he died suddenly in a local hotel of a coronary thrombosis. An autopsy disclosed chronic mitral endocarditis, as well as a thrombosis of the right coronary artery with an attendant arteriosclerosis.

In the absence of any other cause for the sudden and fatal heart attack, I find that there was a close association between his death and his service. I find and rule that the death of Kelley was attributable directly and proximately to the risks of war and warlike experiences which he had suffered during the voyage. While the arterioscler-

osis and the mitral endocarditis may have existed at the commencement of this voyage, they were entirely latent and unrecognized even to the maritime examining physician, and had never given Kelley any trouble. In the normal course of events it is not likely that these conditions by themselves would cause the death of an active thirty-seven year old man like Kelley. It is more likely that the unusual emotional stress and excitement and the nervous tension arising from these warlike experiences placed an additional strain upon his heart muscles and vessels resulting in the thrombosis. It is not uncommon for the thrombosis to occur sometime subsequent to the occurrence of an emotional or physical exertion.

The case of Gadsden v. United States, D.C., 54 F.Supp. 151, 152, on which the respondent relies, is distinguishable on its facts. There a fifty-four year old seaman, known to be suffering from "cardiac disease, valvular aortic insufficiency, syphilis tertiary; aortic insufficiency," and certified as "totally disabled," shipped on a United States vessel on a voyage between New York and Florida. The man died more than three months after the conclusion of the voyage, and his death was attributed to "cardiac failure due to aortic insufficiency." The only evidence of any occurrence during the voyage that might have caused his death was a statement by the deceased to his wife that a submarine alarm during the voyage "badly scared" him. The court questioned the admissibilty of such evidence, but stated, " * * * even if the evidence was properly admissible the libel in this case would fail because there is no satisfactory or convincing evidence that the seaman's bad scare caused his death or materially contributed thereto." Here, as stated, there is evidence sufficient to show that the warlike experiences did cause the thrombosis and thus Kelley's death.

### Conclusions of Law.

From the foregoing I conclude and rule that the death of George F. Kelley was attributable directly and proximately to the risks of war and warlike experiences.

Judgment is to be entered for the libellant.

